IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED
LOGGED        ENTERED
RECEIVED

APR 1 2 2016

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY
                    DEPUTY

ANTHONY QUINTON KELLY, #352736          *
    Plaintiff,
       v.                           *        CIVIL ACTION NO. RDB-15-3647

LESLIE SIMPSON, *Case Management*         *
  *Specialist*
LIEUTENANT GEORGE B. ALPINE              *
SERGEANT ROBERT WERNER
DEPARTMENT OF PUBLIC SAFETY AND          *
  CORRECTIONAL SERVICES
       Defendants.                    *
                             *****

## MEMORANDUM

On November 30, 2015, the Court received for filing inmate Anthony Kelly's self-represented 42 U.S.C. § 1983 civil rights action. The Complaint seeks damages from the Maryland Department of Public Safety and Correctional Services and its personnel. Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 11), as well as legal memorandum (ECF No. 11-1),[1] and a number of exhibits. ECF No. 11-3 through ECF No. 11-7. In response, Kelly has filed an Emergency Motion to Strike and an Emergency Motion for Judgment on the Pleadings. ECF Nos. 13 & 15.

The matter is ready for disposition. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). Defendants' Motion, construed as a motion for summary judgment, IS GRANTED for reasons to follow.

### I. Background

Kelly, who is currently confined at the North Branch Correctional Institution ("NBCI"),

---

[1]    All exhibits are referenced by their electronic filing number.

alleges that on October 8, 2015, he was taken off all calls from his job as an observation aide. He was informed that he had not been fired from his job and he was to remain on single-cell status. ECF No. 1 at p. 2. Kelly claims that on October 16, 2015, he was called to the office of Dr. Liller, the Chief Psychologist, questioned,[2] and informed he could leave. He alleges that the named Defendants stood outside Dr. Liller's office and that Defendant Simpson wanted Dr. Liller to falsely indicate that Kelly was a "danger and threat to himself and others," but the "dirty trick did not work." Kelly maintains that Simpson was seeking an excuse to have him fired in retaliation for his filing a defamation complaint against her in state court. He states that on about October 19, 2015, Simpson reclassified him to a work sanitation detail, which also resulted in his removal from single-cell status. *Id.* Finally, Kelly asserts that on October 20, 2015, he spoke to Defendant Werner and was told he was being fired by Dr. Liller due to concerns about his mental health. He claims that he discussed his claims of discrimination with Defendants Alpine and Werner and was told to pack up his possessions because he was being moved out of his housing unit, away from Simpson, due to his prior lawsuit. *Id.* at pp. 2-3. In an attachment, Kelly contends that he filed two administrative remedy procedure ("ARP") grievances regarding his claims of retaliation and racial discrimination and was informed by Sgt. Forney that they had been "misplaced" and he should fill out another ARP form. ECF No. 1-1.

## II. Standard of Review

Defendants' Motion is styled as a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) or, in the Alternative, for Summary Judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil

---

[2]        Kelly acknowledges that he informed D. Liller that he would plead the Fifth Amendment as to each question he was asked. ECF No. 1 at p. 2.

Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).  Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149.  In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165, 167.  I am satisfied that given the exhibits presented here (which were also presented to

3

Kelly), I have ample information with which to address the pleading as filed for summary judgment.

    Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

    The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:  By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).  In analyzing a summary judgment motion, the court should "view the evidence in the light most favorable to…the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

    "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). But, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile*

*Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black &. Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45.

In the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Because Kelly is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the Court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

### III. Discussion

Defendants allege that on October 8, 2015, Kelly was referred to the psychology department for consultation and screening after he had written a number of letters containing "odd content" to prison administrators. ECF No. 11-3 at White Decl. They argue that due to

Kelly's confusion, "odd" letters, and "oppositional behavior," the case management department was concerned with Kelly's mental stability and suitability as an observation aide.[3]  ECF No. 11-3 at White Decl.  Kelly was placed on "Off-All-Calls" by case management supervision pending the management review process.  In such a situation, staff holds in an inmate and does not send him to his work detail.  On October 19, 2015, Simpson met with Kelly to discuss his reassignment at the request of Case Management Manager Richard Rodrick.  The reassignment recommendation was approved on October 30, 2015.

Defendants maintain that housing in a single cell is not afforded to every prisoner on a job detail, and inmates who are observational aides will often be assigned a single cell as a "courtesy," given the nature of their assignment.  Defendants state that when Kelly was reassigned to another job, he was moved from his single cell to allow another inmate in a preferred job the opportunity to be housed in a single cell.  *Id.*  Defendants Alpine, Werner and Simpson, as well as Sgt. Forney affirm that at no time did they intentionally misplace or interfere with Kelly's ARP, nor did they or any other officer in their presence reclassify Kelly or reassign, transfer or remove Kelly from his housing unit in retaliation for filing a lawsuit against Simpson.  ECF Nos. 11-4, 11-5, 11-6 & 11-7.  Defendants note that Kelly has not filed any administrative remedy procedure ("ARP") grievances since 2010.  ECF No. 11-3 at p. 42.

In his Emergency Motion to Strike, Kelly asks that Defendants' responsive pleading be stricken as it is a "clearly 'insufficient defense' or [contains] redundant, immaterial, impertinent, or scandalous matter."  ECF No. 13.  He claims that Defendants are in "default" as their the responsive pleading was filed in an untimely manner.  ECF No. 13.  In his Emergency Motion

---

[3]      An observation aide is assigned to observe other inmates who have threatened self -harm.
The aide must report any unusual or self-harming behavior to the officer on duty.  ECF No. 11-3 at White
Decl.

for Judgment of the Pleadings, Kelly argues that Defendants' responsive pleading rests on an "indisputably meritless theory" and he has raised an arguable question of law.   ECF No. 15.   He contends that there is a disputed factual issue and he has suffered prejudice warranting relief. *Id.*

### IV. Analysis

The State Defendants raise several affirmative defenses: entitlement to Eleventh Amendment immunity, Kelly's failure to exhaust available administrative remedies, his failure to state a claim, and qualified immunity.[4]   The affirmative defense of administrative exhaustion shall be addressed before the Court may examine the merits of Kelly's claims.   The Prisoner Litigation Reform Act provides, in pertinent part:

> (a) Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).[5]

---

[4]      Defendants' filing was timely under Federal Rules and Court Orders. Therefore, Kelly's request that default judgment be entered shall be denied.

[5]      Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust

Administrative remedies must, however, be available to the inmate and this Court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). The Fourth Circuit has addressed the meaning of "available" remedies in *Moore v. Bennette,* 517 F.3d 717, 725 (4th Cir. 2008):

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*See also Blake v. Ross*, 987 F.3d 693, 698-701 (4th Cir. 2015), *cert. granted, Ross v. Blake*, 136 S. Ct. 614 (2015) (review of whether there is common law "special circumstances" exception to the PLRA that relieves an inmate of his mandatory obligation to exhaust administrative remedies when the inmate erroneously believes that he satisfied exhaustion by participating in an internal investigation).

Kelly's original Complaint contended that his ARPs concerning the issues raised herein were intentionally "misplaced." Although he does not directly refute Defendants' declarations that they did not intentionally misplace his remedies, the Court is not inclined to dismiss the Complaint on this affirmative defense in light of Kelly's initial statements regarding his attempts

---

administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

to file ARPs and NBCI staff interference.  Instead, I shall examine whether summary judgment in favor of the individual Defendants[6] would be appropriate because the pleadings, declarations, and exhibits on file demonstrate that they did not violate Kelly's constitutional rights.

Insofar as Kelly claims that the reassignment from a preferred job and housing unit occurred in retaliation for his filing a state court civil complaint, the Court finds that he has failed to prove the required elements of a constitutional claim of retaliation.  While retaliation against an inmate for the exercise of a constitutional right states a claim, *see American Civ. Liberties Union v. Wicomico County*, 999 F. 2d 780, 785-86 (4th Cir. 1993), Kelly "[b]ears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision..." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).  To state a claim for retaliation, Kelly must demonstrate (1) the invocation of a constitutional right; (2) the intent to retaliate against him for his exercise of that right; (3) a retaliatory adverse act; and (4) causation; *i.e.*, but for the retaliatory motive, the complained-of incident would not have occurred.  *See Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997).  In light of the documented and verified reasons for Kelly's job reassignment and housing unit movement, he cannot demonstrate a constitutional claim of retaliation.

Further, to the extent that Kelly claims he has been subject to discrimination on the basis of race, it is clear that he has a constitutional right to be free from such discrimination.  *See*

---

[6]      Defendants assert that the DPSCS is not a person within the meaning of 42 U.S.C. § 1983 and the State of Maryland has not waived its sovereign immunity under the Eleventh Amendment to suit in federal court. I concur with this affirmative defense. Defendant DPSCS is a state agency. *See* Md. Code. Ann., Corr. Servs., Art., §§ 1-101(f) and 2-101. Neither a state nor an agency of a state is a "person" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64-65 & 70-71 (1989).  Moreover, state agencies are immune from liability under the Eleventh Amendment from a § 1983 suit in federal court without regard to the nature of the relief sought. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101-01 (1984); *C.H. v. Oliva*, 226 F.3d 198, 201 (3rd Cir. 2000). Consequently, the Complaint against DPSCS is subject to dismissal for want of jurisdiction.

*generally Lee v. Washington,* 390 U.S. 333 (1968). The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439 (1985). To show that his equal protection rights were violated, Kelly must demonstrate that (1) "he has been treated differently from others with whom he is similarly situated and (2) that the differential treatment was the result of intentional discrimination." *Morrison v. Garraghty,* 239 F.3d 648, 654 (4th Cir. 2001). [The inmate] must also show that the disparity in treatment cannot survive the appropriate level of scrutiny, which in a prison setting, means that [a plaintiff] must demonstrate that his treatment was not reasonably related to any penological interests." *Phillips v. Girdich,* 408 F.3d 124, 129 (2d Cir. 2005) (internal citation, quotation marks, and alterations omitted). A constitution violation cannot be made given the neutral-based reasons for Kelly's job and housing reassignment.

### Conclusion

Kelly has failed to prove that the named Defendants violated his constitutional rights. Summary judgment will be entered in favor of Defendants in a separate Order to follow.[7] Kelly's Emergency Motions to Strike and for Judgment on the Pleadings shall be denied.

Date: *April 11, 2016*                          *Rll D. Bntt*
                                                    RICHARD D. BENNETT
                                                    UNITED STATES DISTRICT JUDGE

---

[7]      In light of this decision, the Court need not evaluate Defendants' qualified immunity defense.